PHILENA B. FISHER, Administratrix, etc., Respondent, *v.* STANLEY A. BANTA, Impleaded, etc., Appellant.

The will of B. directed his executrix to divide his real estate equally between his two sons C. and S., after the youngest arrived at the age of twenty-three. In a codicil he directed his executrix to sell all his real estate. Both sons survived the testator. In an action for a construction of the will, *held*, that there being no purpose for the sale expressed in the codicil, the fair inference was it was for the purpose of division; that as the sons survived, the purpose had not failed; and that the direction to sell operated as a conversion of the real estate into personalty immediately upon the death of the testator and the land became money for all purposes of administration, the sons taking their interest as legatees; and that upon the death of C. before actual sale, his interest passed to his personal representatives.

Also, *held*, that conversion was not prevented because the legal estate was not given in trust to the executrix, or because there was no devise of the lands, and they passed by descent to the two sons.

C. died soon after B., leaving a will by which he bequeathed certain legacies and made his brother C. residuary devisee and legatee. The execu-

trix of B. sold portions of the real estate, and upon an accounting by her the proceeds were brought into court and distributed by decree of the surrogate as personal estate, one moiety to S., the other to H., executor of B., who therewith paid the legacies in part. Before the balance of the lands were sold the executrix died and H. was appointed administrator, with will annexed. The share of C. in the estate of B. was the only source from which the legacies given by his will could be paid. On an accounting had at the request of H. as such administrator, S. and H., as the executors of C., were made parties; the legatees were not. The surrogate adjudged, in substance, that there was no conversion of the real estate of B. under his will, and that S., as residuary devisee under the will of C., was entitled to one-half the real estate unsold and one-half the proceeds of what had been sold, and settled the accounts under this theory. H. refused to appeal or to allow the legatees to appeal in his name, although they offered indemnity. *Held*, that the legatees were not concluded by the decree, as the estate of C. was not represented on the accounting in such a sense as to bind them; that while in ordinary cases, in proceedings upon application of an executor or administrator for an accounting, the service of a citation upon the executor or administrator of a deceased legatee would be sufficient, in the absence of fraud or collusion, to bind the estate, yet as here H. represented both estates, the legatees should not be concluded by a proceeding by him against himself, but should have been made parties; and that said legatees could maintain an action for a construction of the wills.

(Argued March 29, 1876; decided September 19, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department affirming a judgment in favor of plaintiffs, entered upon a decision of the court at Special Term.

This action was brought to obtain a construction of two wills, one that of Albert Banta, the other that of Charles Edward Banta, son of said Albert Banta. The plaintiffs are the general legatees under the will of said Charles Edward Banta. Defendant George Hubbell is executor of the said will, and also administrator, with the will annexed, of Albert Banta. Defendant Stanley A. Banta is the son of Albert Banta.

The court found the following facts, in substance:

That Albert Banta died prior to the 10th day of February, 1864, possessed of a large quantity of real estate, part of which was situated in this State and part in the State of Iowa,

and of sufficient personal property to satisfy the legacies bequeathed to his sons and to furnish the annuity provided for the widow, as hereafter stated; that said Albert Banta left him surviving two sons, Charles Edward and Stanley Adelbert, and a widow, Sarah A., who constituted his only heirs and next of kin; that he left a last will and testament, bearing date February 3, 1858, and a codicil thereto, bearing date August 20, 1862, which were duly admitted to probate by the surrogate of Ontario county, and letters testamentary were duly issued to said widow, Sarah A. Banta, who accepted said trust and continued to act as such executrix till her death.

The will gives legacies of $1,000 each to the two sons, and provides for their support and the support of their mother, during their minority, "out of the rents, issues and profits" of the estate. It also gives to the widow the use of the homestead and furniture for life, and an annuity of $500 a year after the sons reach twenty-one, during her life, in lieu of dower. An investment is directed sufficient to produce such annuity.

The sixth clause of the will is as follows:

"Sixth. After my youngest child shall arrive at the age of twenty-three years, I direct my executors to divide my real estate equally between said sons, Charles Edward and Stanley Adelbert."

The seventh item gives, subject to the foregoing bequests: to his two sons, share and share alike, all his personal property, to be divided on his youngest one arriving at the age of twenty-three, except the investment for the benefit of the widow, which was not to be divided until after her decease.

The codicil simply contained a direction requiring his executrix to sell and dispose of all his real estate.

That said executrix, by virtue of said will and codicil, disposed of the real estate situated in the State of Iowa, for cash, and on the 2d day of October, 1867, and on the 13th day of December, 1869, had two distinct accountings before said surrogate, who upon each of such accountings duly decreed that

*Statement of case.*

the money then in such executrix's hands should be distributed as so much money in her hands as executrix; that the sum of $8,000 was set apart and invested in United States bonds, by said executrix, to raise the annuity of $500 for the use of said widow, as in said will directed, and that the same was kept so invested, and remained in the hands of said executrix, together with the accumulations thereon over and above said annuity, up to the time of her death; that on the 8th day of October, 1870, said executrix died, and on the fifteenth day of same month the defendant, George Hubbell, was duly appointed administrator *de bonis non* with the will annexed, of the estate of Albert Banta, deceased; that he accepted such trust, and still continues such administrator; that, at the time said defendant was so appointed he came into the possession of all the personal estate of said Albert Banta, then remaining undisposed of, together with the $8,000 in the form of bonds, and its accumulation as aforesaid.

That after the death of said Albert Banta, and in the month of September, 1864, Charles Edward, one of the said sons of Albert Banta, died, unmarried, leaving the defendant Stanley Adelbert his sole heir and next of kin; that at the time of such death said Charles Edward was over the age of twenty-three years.

That he left his last will and testament, bearing date September 10, 1864, which was duly admitted to probate and letters testamentary thereunder were on that day duly issued to the defendant George Hubbell, as executor, who accepted such trust, and still remains such executor. In and by said will said Charles Edward gave legacies to the plaintiffs amounting to $18,000, and gave all the rest and residue of his property to his brother, Stanley Adelbert Banta.

That said Charles Edward, at his death, was possessed of no property except what he derived from the estate of his father, said Albert Banta, and that he had only received from such estate $1,000, of which sum but a few dollars remained at his decease; that the defendant George Hubbell, as executor, has paid to plaintiffs on account of their said legacies, in pro-

portion to their respective legacies, the sum of $13,781.01, leaving the balance of said legacies unpaid.

That all the real estate remaining undisposed of at the death of Sarah H. Banta, executrix, was vested in the defendant Stanley A. Banta, and that at that time he entered into possession thereof, and has continued to enjoy the same ever since.

That said defendant George Hubbell, as administrator *de bonis non*, on the 27th day of March, 1871, had, upon his own application, a final accounting before said surrogate ; that said surrogate decreed, that of the assets then in the hands of said administrator, one-half thereof should be paid to the defendant Stanley A. Banta, and the remaining one-half to the defendant George Hubbell, as trustee of the estate of Charles Edward Banta, to be held by him for the sole benefit of the defendant Stanley A. Banta.

That the only parties cited to appear on that accounting were defendant George Hubbell, as executor of Charles Edward Banta, deceased, and defendant Stanley A. Banta ; that the plaintiffs were not in any manner represented on such accounting ; that the defendant Hubbell, as executor of said Charles Edward, refused to appeal from said decree, and refused to allow plaintiffs, or either of them, to appeal in his name, although they offered to indemnify him fully against all costs and liabilities ; that defendant Hubbell, as executor of said Charles Edward Banta, has refused and still refuses to pay these plaintiffs, or either of them, any sum whatever towards the satisfaction of their said legacies, since the accounting and decree aforesaid.

As conclusions of law, the court found, that upon the death of Albert Banta, his estate, both real and personal, vested in his sons in equal parts, subject to the charges and provisions made in favor of the widow ; that by the terms of the will of Charles Edward Banta, the plaintiffs were entitled to the payment of their legacies, together with interest, to be computed after one year from the death of testator ; that said legacies, by the terms of said will, were made a charge and lien upon

any estate, real or personal, vested in said testator at the time of his death.

That the decretal order made by the surrogate, on the 27th day of March, 1871, was in no wise valid and binding on plaintiffs ; and it appointed a referee to investigate the accounts of Hubbell, as administrator of Albert Banta and as executor of Charles Edward Banta, and directed the defendants to pay over to the referee any and all assets of the two estates in their possession, save that defendant Stanley A. Banta was authorized to retain one-half the residuary estate of Albert Banta, and that the referee, from the assets received by him belonging to the estate of Charles Edward Banta, satisfy plaintiff's legacies.

The General Term, upon appeal, affirmed the decision and findings, save so much thereof as authorized the referee to act as receiver, and in lieu thereof authorized plaintiff, if defendant refused to comply with the decree as to an accounting, or if, after accounting before the referee, he refuse to provide for the payment of plaintiff's legacies to apply for the appointment of a receiver. An accounting was had before the referee, who found that there was in the hands of Hubbell, as administrator *de bonis non* of Albert Banta, $9,134.58; of which the sum of $4,938.34 belonged to the estate of Charles Edward Banta; also, that there were portions of Albert Banta's real estate unsold. This report was confirmed and judgment was entered directing Hubbell to pay to plaintiffs the moneys so in his hands belonging to Charles Edward Banta's estate, less certain specified deductions, and appointing a referee to sell the real estate in this State, etc.

*E. H. Morse* for the appellant. There was, by the will of Albert Banta, no equitable conversion of his real estate into money. (*Kinnier* v. *Rogers*, 42 N. Y., 531–535 ; *Post* v. *Hover*, 33 id., 593, 599 ; 1 Jarman on Wills, 465 ; *Lynes* v. *Townsend*, 33 Mass., 593, 599 ; *Reynolds* v. *Reynolds*, 16 id., 257 ; 1 Wms. on Exrs., 554, 555 ; 2 Spence on Eq. Jur.,

261; *Bogert* v. *Hertell*, 4 Hill, 492; *Smith* v. *Claxton*, 4 Mad., 484; *Harris* v. *Clark*, 7 N. Y., 242, 260; *White* v. *Howard*, 46 id., 144, 162; *Wright* v. *Trustees*, 1 Hoff., 203, 218; *Randall* v. *Bookey*, Prec. in Ch., 162; *Emblyn* v. *Freeman*, id., 541; *Hawley* v. *James*, 5 Paige, 318, 344; 7 id., 213, 219; L. & D. on Eq. Conv., 93, 116; *Ackvoys* v. *Smithson*, 1 Br. C. C., 503; *Cruse* v. *Barley*, 2 P. Wms., 22; 1 Roper on Legacies, 530; *Jackson* v. *Janson*, 6 J. R., 651, 660; *Wood* v. *Keyes*, 8 Paige, 365; O'Hara on Wills, 157; 2 Keen, 653; *In re Fox*, 52 N. Y., 530; *Hoppock* v. *Tucker*, 59 id., 208; *Smith* v. *Claxton*, 4 Mad., 484; *Ross* v. *Roberts*, 4 N. Y. Supr. C., 318.) The decree of the surrogate of March 27, 1871, was valid and effective to conclude any person interested in the estate of Charles Edward Banta. (*Dyckman* v. *Mayor, etc.*, 5 N. Y., 443; *Sheldon* v. *Wright*, id., 497, 514; *Voorhees* v. *Bk. of U. S.*, 10 Pet., 449; *B. Svg. Bk.* v. *Eldridge*, 28 Conn., 556; *Bailey* v. *Ryder*, 10 N. Y., 363, 370; *Schooner Hoppett* v. *U. S.*, 7 Cranch, 389; *Harrison* v. *Nixon*, 9 Pet., 503; *Galand* v. *Davis*, 4 How. [U. S.], 148; *Thomas* v. *Austin*, 4 Barb., 265, 273; *N. Y. C. Ins. Co.* v. *Nat. Pro. Ins. Co.*, 20 id., 468, 473; 2 R. S., 97, § 66; *Graham* v. *Dewitt*, 3 Brad., 192; *Fisher* v. *Hepburn*, 48 N. Y., 41; *Mead* v. *Mitchell*, 17 id., 210; *Cole* v. *Reynolds*, 18 id., 74, 77; *Bk. of Poughkeepsie* v. *Hasbrouck*, 6 id., 216; *Wright* v. *Trustees*, 1 Hoff. Ch., 202; *Smith* v. *Lawrence*, 11 Paige, 206; *McGregor* v. *McGregor*, 35 N. Y., 208.) It was error to hold that the legacies given to plaintiffs under the will of Charles Edward were made a charge and lien upon the real estate vested in said testator at the time of his death. (*Lupton* v. *Lupton*, 2 J. Ch., 614, 623; *Reynolds* v. *Reynolds*, 16 N. Y., 257; *Kinnier* v. *Rogers*, 42 id., 531; *Lynes* v. *Townsend*, 33 id., 562; *Simpson* v. *English*, 4 T. & C., 80; *Goddard* v. *Pomeroy*, 36 Barb., 546; *Castle* v. *Gillett*, L. R., 16 Eq., 530, 544; *Lewis* v. *Darling*, 16 How. [U. S.], 1; *Tracy* v. *Tracy*, 15 Barb., 503; *R. C. Ger. Ch.* v. *Watcher*, 42 id., 43; *Shutters* v. *John*, 38 id., 80; *Myers* v. *Eddy*, 35 id., 203; Hill on Trustees, 360.)

*W. W. Rowley* for the respondent. The vesting of the estate in Charles Edward and Stanley was not postponed beyond the death of their father. (*Hoppock* v. *Tucker*, 59 N. Y., 202.) They took vested interests in moieties as of the testator's death in all lands of which he died seized, not liable to be defeated by any subsequent condition of survivorship of either before arriving at the given age, and without any limitation whatever. (*Crosby* v. *Wendell*, 6 Paige, 543–548; *Stagg* v. *Jackson*, 1 N. Y., 206; 41 id., 289; 2 Edw. Ch., 156–159; *Livingston* v. *Green*, 6 Lans., 50–55; 52 N. Y., 122.) The death of one of the sons prior to the other cannot be construed as divesting the estate. (*Johnson* v. *Valentine*, 4 Sandf., 37; *Stagg* v. *Jackson*, 1 N. Y., 206; *Converse* v. *Kellogg*, 7 Barb., 590; *Doe* v. *Peruyn*, 3 T. R., 484; *Rose* v. *Hill*, 3 Burr, 381.) The intention to charge the real estate with the payment of the legacies is declared in the will and codicil. (*R. C. Ch.* v. *Watcher*, 42 Barb., 43; *Shutters* v. *Johnson*, 38 id., 80; *Taylor* v. *Dodd*, 58 N. Y., 335; 1 Tucker, 32; 2 Sandf. Ch., 131; 1 id., 132; *Hays* v. *Gourley*, 3 T. & C., 115.) A devise, grant or conveyance of the " use and income " carries the land and personal estate itself. (*Craig* v. *Craig*, 3 Barbour's Ch.; 2 Jarman on Wills [2d ed.], 376, 420; *Reed* v. *Reed*, 9 Mass., 372; *Fox* v. *Phelps*, 17 Wend., 393; *Rhodes* v. *Rhodes*, 3 Sandf. Ch., 279; 5 id., 467; 7 Hill, 305; 3 Bradf., 144, 231, 287; *Scott* v. *Guernsey*, 48 N. Y., 106.) The estate which vested in Charles E., September 10, 1864, was both devisable and assignable. (1 Redf. on Wills, chap. 9, § 30, p. 388 [ed. 1854]; Powell on Devises [1st Am. ed.], 314; Jarman on Wills, 764, 771; *Wood* v. *Cone*, 7 Paige, 472; *Coster* v. *Lorillard*, 14 Wend., 321, 350, 382; *Kane* v. *Gott*, 24 id., 641, 660; 13 Alb. L. J., 198, 199.) The doctrine of equitable conversion is applicable under the will of Albert Banta. (L. & D. on Eq. Conv., 8; 1 Jarman on Wills [3d ed.], 550; *Bogart* v. *Hartell*, 4 Hill, 492; *Johnson* v. *Bennett*, 39 Barb., 237–251; *Dodge* v. *Pond*, 23 N. Y., 69; *Chamberlain* v. *Chamberlain*, 43 id., 424; *Stagg* v. *Jackson*, 1 id., 206.)

ANDREWS, J. The direction in the codicil to the will of Albert Banta, that his executor should sell all his real estate, operated as a conversion of the real estate into personalty, from the time of his death. The direction is unqualified and peremptory. It leaves no discretion to the executor, except as to the time and manner of sale. The exercise of the power of sale is subject to no condition, except that which it implied in every case of this character, that, at the death of the testator, the purposes for which a conversion was directed have not failed, but still require that the power should be exercised. In all cases where conversion takes place, it is because the purposes of the will require it. The conversion may be entire, embracing the whole estate, or partial, extending only so far as is necessary to satisfy special purposes indicated in the will. The matter to be considered is the intention of the testator. The conversion, whether absolute to all intents, or partial only, is the one or the other, because the purpose of the will, *i. e.*, the intention of the testator was that the conversion should be general or partial, for all purposes or for limited purposes only. There is no purpose specified in the codicil for which the sale is directed to be made. But, taken in connection with the will, the fair inference is that it was for the purpose of a division of his estate between the testator's two sons. By the sixth clause the executor was directed to divide the real estate between them, when the youngest should arrive at the age of twenty-three years. In the absence of a power of sale, this direction would be incapable of execution, except through an actual partition, and a setting apart of portions of the real estate in severalty to the sons. The testator owned lands in different States, and it is a reasonable construction of the will that the power of sale was given to the executor for convenience of division. But it was not an authority merely, it was an imperative direction to sell all the testator's real estate.

The sons survived the testator, and the purpose for which the sale was directed had not failed. It became the duty of the executor to sell the land and divide the proceeds between

them. From the moment of the testator's death, the conversion took place, and the land became money for all purposes of administration. The impression of money was fixed upon it; the sons took their interest in the converted property as legatees, and upon their death, before actual sale, it would pass to their personal representatives. (*Fletcher* v. *Ashburner*, 1 Bro. Ch. Cas., 497; *Leslie* v. *Craig*, 3 Wheat., 587; *Bogert* v. *Hertell*, 4 Hill, 492, and cases cited; *Stagg* v. *Jackson*, 1 Comst., 206.)

The power of sale was not affected by the death of Charles Edward Banta before the lands of Albert Banta were sold by his executor. The necessity of a sale for the purpose of a division between the surviving brother and the personal representatives of Charles Edward, continued. Nor was conversion prevented from taking place, because the legal estate was not given in trust to the person in whom the power of sale was vested, or because then there was no devise of the lands, and that they passed by descent to the two sons of the testator. (1 Jar., 465; *Post* v. *Hover*, 33 N. Y., 593; *Bogart* v. *Hertell*, *supra*.)

Upon the death of Albert Banta, in 1864, the widow of the testator qualified as executor, and took upon herself the execution of the will. Charles Edward Banta died afterwards in the same year, leaving a will, by which he gave legacies to the plaintiffs, and the rest, residue and remainder of his property to his brother, one of the defendants in this action, with a direction that his executor should retain possession, and control and manage the residue until the legatee should arrive at the age of twenty-nine years, and appointed the defendant Hubbell his executor. The executor of Albert Banta proceeded and acted upon the assumption that there was, by his will, a conversion of his real estate into personalty, which, as we have seen, was the true construction of the instrument. She sold portions of the real estate of the testator from time to time, and on two several accountings before the surrogate, had on her application in 1867 and 1869, to which the defendants were made parties (the defendant Stanley A. Banta, as legatee under his father's will, and the defendant Hubbell, as

executor of Charles Edward Banta), the proceeds were brought into court and distributed by the decree of the surrogate as personal estate, one moiety to the defendant Stanley A. Banta, and the other to the defendant Hubbell, as executor. There was no appeal from the decree of the surrogate; it was fully executed, and the executor of Charles Edward Banta paid over to the legatees under his will the moiety of the proceeds received by him on the distribution. All this was done in strict accordance with the legal rights of the parties. After the accounting in 1869, there remained in the hands of the executor of Albert Banta the sum of $8,000, proceeds of the personal estate of the testator, which had been invested to produce the annuity given to his widow by the will, and a part of his real estate remained unsold. The executor died in 1870, and the defendant Hubbell was appointed administrator, with the will annexed, of Albert Banta's estate, and as such received the fund of $8,000 referred to, and its accumulations. The legacies to the plaintiffs under the will of Charles Edward Banta have been paid only in part. Their testator left no property at his death, except what he was entitled to under the will of his father, and' to pay the plaintiffs' legacies will require the application of his entire interest in that estate. It does not appear that there are any debts existing against either testator. Under these circumstances it was the plain right of the plaintiffs that the real estate of Albert Banta remaining unsold should be sold, and that a moiety of the proceeds, together with one-half of the fund in the hands of his administrator, should be paid to the executor of Charles Edward Banta, and applied in payment of their legacies. This, substantially, was the relief awarded to the plaintiffs by the judgment in this action, and the judgment should be affirmed, unless the plaintiffs were concluded by the decree of the surrogate, made in 1871, on the accounting by the defendant Hubbell as administrator with the will annexed of the estate of Albert Banta. This accounting was had on his application, before the successor of the surrogate, who made the decrees on the accountings by the executor in 1867

and 1869, and Stanley A. Banta and the defendant Hub bell, as executor of Charles Edward Banta, were made par-ties. The surrogate, by his decree, adjudged, in substance, that there was no conversion of the real estate of Albert Banta under his will, and that Stanley A. Banta, as residuary devisee and legatee under the will of Charles Edward, was entitled to the one-half of the real estate of Albert Banta remaining unsold, and to one-half of the proceeds of what had been sold by his executor, and that the decrees of the former surrogate were erroneous in awarding to the executor of Charles Edward any portion of the proceeds of such sales, and to correct this alleged error he directed that Charles Edward Banta's share of the personal estate of Albert Banta, then in the hands of Hubbell, as administrator, should be paid to and retained by him as trustee of Stanley A. Banta, under the will of Chales Edward Banta, in satisfaction, *pro tanto*, of the proceeds of real estate of Albert Banta, paid under the former decrees to the executor of Charles Edward. From this decree no appeal was taken. The defendant Hubbell refused to appeal therefrom, or to allow the plaintiffs to appeal in his name, although they offered to indemnify him against the costs of the appeal.

We are of opinion that the decree does not conclude the plaintiffs. The fund before the surrogate for distri-bution, when the decree was made, was derived from the personal estate of Albert Banta, and not from the sale of real estate. The testator, Albert Banta, by his will, gave his personal estate, in equal shares, to his two sons. The decrees of the former surrogate were final. They adjudged that the proceeds from the sales of real estate were personal property, and directed a distribution upon that theory. They stood unreversed, and were not opened or set aside by the surrogate on the accounting in 1871. The surrogate should not have disregarded them, and his decree charging the share of Charles Edward Banta in the personal estate of Albert Banta then remaining to be distributed, with the sums paid to his personal representatives from the proceeds of his real

estate under the former decrees, was erroneous, and reversible on appeal.

It is unnecessary to determine, assuming that the necessary parties were before the court, whether the surrogate exceeded his jurisdiction in making the decree, as we are of the opinion that Charles Edward Banta's estate was not represented on the accounting in such a sense as to bind the plaintiffs, and conclude them by the adjudications made. The decree was made in a proceeding instituted under section 70, article 3, title 3, chapter 6, part 2 of the Revised Statues, by Hubbell, as administrator of Albert Banta, for the final settlement of his accounts. That section is as follows: "An executor or administrator, after the expiration of eighteen months from the granting of letters testamentary or of administration, may render a final account of all his proceedings to the surrogate who appointed him, although not cited to do so, and may obtain a citation to all persons interested in the estate, to attend a final statement of his accounts; which citation shall be served and published in the manner prescribed in the preceding sections of this title, and thereupon the same proceeding shall be had for a final settlement, and with the same effect, in all respects, as in the case of a settlement at the instance of a creditor." The seventy-first section provides that whenever an account shall be rendered, and finally settled under any of the preceding sections, except the sixty-eighth and sixty-ninth, if it shall appear to the surrogate that any part of the estate remains to be distributed, he shall decree payment and distribution of what shall so remain, among the creditors, legatees, etc., "and in such decree shall settle and determine all questions concerning any debt, claim, legacy, bequest, or distributive share; to whom the same shall be payable; and the sum to be paid to each person."

It will be observed that the citation authorized by the seventieth section is to be directed to, and served upon, "all persons interested in the estate," and that the decree of distribution authorized by the seventy-first section is one to be

made upon an accounting had in pursuance of the previous sections of the statute. The persons immediately interested in the accounting of an administrator or executor, or in the distribution of the estate of a decedent by the surrogate, are creditors and next of kin, and in case of a will, legatees. These are the persons, mentioned in the sixtieth section, to whom the citation is to be directed, when the administrator or executor, who has been required to account by the order of the surrogate, applies to have his accounts finally settled.

No specific provision is made in the statute for the service of the citation in the case where a legatee has died before the accounting. But notice of the proceeding is, according to the general rule of law, necessary to bind the interest of the deceased legatee by the decree, and as the legal title to the legacy vests in his personal representatives, service of the citation upon his executor or administrator would ordinarily be sufficient to bind the estate he represents. The plaintiffs were not legatees of Albert Banta. They were legatees under the will of Charles Edward Banta, and Hubbell, as his executor, was made a party to the accounting. The plaintiffs, however, had an interest in the proceeding before the surrogate. The share of their testator in the estate of Albert Banta, was the only source from which their legacies could be paid. It is doubtless true that a decree made on the settlement of Albert Banta's estate, to which the executor of Charles Edward Banta was a party, would, under ordinary circumstances, in the absence of fraud or collusion, conclude them. But the defendant Hubbell was the representative of both estates. So far as the plaintiffs were concerned, the accounting was a proceeding instituted by Hubbell as representative of one estate against himself as the representative of the other estate. It is a familiar principle that a court of equity will require parties having remote interests to be brought in, when necessary to a complete disposition of the matter in litigation (Story's Eq., § 1526), and this, we think, is a case to which this rule applies, and the language of the seventieth section is broad

enough to authorize the legatees of Charles Edward Banta to have been made parties to the accounting.

To give conclusive effect to the decree of the surrogate, against the plaintiffs, is not consistent with general principles. In equity Hubbell was the trustee of the estate of Charles Edward Banta, and the plaintiffs were *cestuis que trust*, and had the beneficial interest. They ought not to be concluded by a proceeding instituted by himself, against himself, in which they were interested. We are of opinion that the decree of the surrogate is not conclusive upon them, and is no obstacle to their maintaining this action.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.