fendant until some time after it was executed, and from Mrs. Kerr's ignorance as to the effect of such a conveyance, she might well have supposed that the deed was to take effect upon her death. Such statements, being admissions of a deceased person, are always received with great caution, and under the circumstances it seems ·to me that they should be allowed but little weight in considering the question of the execution of a deed; but this opinion is already too long, as I simply intended to state the result of my dissent, rather than to enter at large into the reasons. I think the judgment should be reversed and the complaint dismissed.

O'BRIEN, J., concurs.

---

MUTUAL LIFE INS. CO. OF NEW YORK v. BAILEY et al.

(Supreme Court, Appellate Division, First Department. June 11, 1897.)

1. CONVERSION—SALE OF TESTATOR'S REAL ESTATE—DISTRIBUTION OF SURPLUS.
   A direction in a will to executors to sell all of testator's real estate as the same may be sold to advantage, and to distribute the proceeds as therein directed, causes such real estate to be impressed with the character of personalty as of the date of testator's death, and the surplus after sale of testator's land under mortgage should go to the executors.

2. APPEAL—INSUFFICIENT RECORD.
   Where briefs of counsel and the opinion of the referee before whom the case was tried declare that a certain indorsement purports to be a cancellation of a declaration of trust the binding force of which is a material inquiry, but the record contains nothing as to the character of such indorsement, there is no basis for determining whether its exclusion was error.

3. EVIDENCE—COMPETENCY.
   Where the issue is as to the ownership of a mortgage, a claimant who testified that a certain person was the donor thereof should be allowed to ask such donor whether she, the donor, owns or has any interest in the mortgage, and, if she has no interest therein, to whom she had transferred whatever interest she ever had in it.

Appeal from judgment on report of referee.

Action by Mutual Life Insurance Company against Mary E. Bailey and others. Appeal from an order confirming the report of the referee in surplus proceedings. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and PARKER, JJ.

Thomas Darlington, for appellant executors.

William ·T. Washburn, for appellant Mary R. Washburn.

M. Cleiland Milnor, John McDonald, Mortimer S. Brown, and John W. Houston, for respondents.

PARKER, J. The foreclosure of certain mortgages, covering real estate of which Benjamin Richardson died seised, resulted in a surplus, for the distribution of which this proceeding was instituted. Among other contests over the fund was one between the heirs at law and the executors of the will of Benjamin Richardson; the for-

mer successfully contending before the referee that there were no liens on the real estate, and therefore, that they were entitled to the fund; and the latter insisting that, by the terms of the will, the testator's real estate was converted into personalty as of the date of his death, and hence the surplus should go to the executors for administration. As the answer to this question must be found in the will, let us look at so much of it as is pertinent:

"I give, devise, and bequeath to my executor, William T. Washburn, and to Emma Richardson, wife of my brother Joseph, my executrix, and their successors in said office, all the balance of my real estate, wherever located, in trust for the purpose following: First. I hereby direct my said executor and executrix to sell all said real estate from time to time, as the same can be sold to advantage, and out of the avails thereof to pay all my just debts, all the incumbrances upon said real estate, and all the legacies herein given; and, after all said debts, incumbrances, and legacies are paid, to pay the balance remaining to such of my children as may be living at the time of my decease, and the share of such of my children as are now, or as may at the time of my decease be, dead, to their children, in such proportion and share as the law would give them if I died intestate."

The learned referee apparently reached the conclusion that, when this will was before this court on another occasion, something was said, if not decided, in hostility to the present contention of the executors. But we do not so read the opinion in Whitlock v. Washburn, 62 Hun, 369, 17 N. Y. Supp. 60. It was held that the will did not create an express trust; and, that question having been passed on, nothing further can be profitably said on the subject. But whether, under the doctrine of equitable conversion, the testator's real estate became personalty as of the date of his death, was not considered, nor was there occasion for it. The suit was one to reform a contract for the sale of a portion of the testator's land, entered into between the plaintiff and Washburn, one of the executors, both executors having qualified; and it was held that the executors had not the title, for an express trust was not created, but were the donees of a power to sell, and that both executors were required to personally assent and act.

In this case the question is for the first time presented whether the real estate of the testator was converted into personalty; and the answer is not difficult. The rule is that when executors have imposed upon them by will the duty of selling all of a testator's real estate, and of making distribution of the entire proceeds, the real estate will be deemed converted into personalty. Everitt v. Everitt, 29 N. Y. 39; Power v. Cassidy, 79 N. Y. 602; Fraser v. Trustees, 124 N. Y. 479, 26 N. E. 1034; Underwood v. Curtis, 127 N. Y. 523, 28 N. E. 585. Whether the conversion takes place at the death of the testator, or at some later period, depends upon the intention of the testator. If the will, in terms, provides for a sale at a specified future time, or creates a trust with the discretion to sell only on the happening of a designated event, which might or might not happen, then the conversion takes place on its occurrence. Otherwise the conversion will be deemed to take place as of the date of testator's death. 3 Pom. Eq. Jur. § 1162; Fisher v. Banta, 66 N. Y.

468.   Every element requisite to an equitable conversion of the real estate from which this surplus arises is present in this will.   No discretion whatever is vested in the executors, except as to time of sale.   They are commanded to sell the real estate, and every part of it, and distribute the proceeds in the manner directed by the will. With commendable industry, counsel have brought to our attention many cases in which was lacking some element essential to the conversion of a testator's real estate into personalty as of the date of death; but they are not serviceable in this case, where the will in clear, unmistakable terms confers upon the executors the power to sell all real estate, commands the exercise of that power as to every part of it, and directs the executors to make distribution of every dollar of the proceeds.   The testator's real estate, therefore, at the date of his death, became impressed with the character of personalty; and the avails of it, whether resulting from the exercise of the power of sale conferred upon the executors, or from a sale under a mortgage foreclosure, are personalty, which it is the duty and the right of the executors to receive for the purposes of administration.   The referee should therefore have directed the payment of the surplus to the executors, instead of to the heirs at law.

The matter most seriously contested before the referee related to a bond and mortgage executed by the executors and the heirs at law of Richardson, in which was described the property from which this surplus results.   It seems that the executors and all others interested in the estate deemed it advisable to borrow the sum of $35,-000; and a mortgage therefor was executed to Mary R. Washburn, the wife of one of the executors.   It is the claim of the heirs that Mary R. Washburn was not at any time the owner of the mortgage; that the money which it was given to secure was the money of Emma J. Richardson, executrix; and that the mortgage was given to Mrs. Washburn for Mrs. Richardson, to whom it at all times belonged.   The contestants introduced evidence tending to show withdrawals of moneys from the estate by the executors, which were not specially applied on any account at the time, amounting in the aggregate to a greater sum than the principal and interest secured by the bond and mortgage.   It was also made to appear that Emma J. Richardson, the executrix, took an active interest in the affairs of the estate from the day of her qualification as executrix, and that she knew of Washburn's drawing large sums of money from the funds of the estate; indeed, that she consented and approved of his doing so.   By reason of these facts, it was insisted that she was properly surchargeable, as executrix, with the amount of such withdrawals; and, as they exceeded the sum secured by the bond and mortgage with interest, that such application of payments as the law made operated to discharge the mortgage debt.   On these facts, the referee found in favor of the contestants, resulting in a decision that the mortgage was paid.

The evidence before the referee upon that subject justified the findings of fact made by him; but it is contended on the part of the appellant Mary R. Washburn, and we think rightly, that the referee

refused to receive evidence, which she had a right to have considered by him in passing on the question of the ownership of the mortgage, as to whether the mortgage belonged to her, as she testified, or to Emma J. Richardson, the executrix. The contestants, as a part of their case, put in evidence a declaration of trust executed by Mary R. Washburn, bearing the same date as that of the bond and mortgage, by which she agreed, among other things, to make assignment of the bond and mortgage to Emma J. Richardson upon demand. Mrs. Washburn offered in evidence an indorsement upon the paper containing the declaration of trust signed by Emma J. Richardson; and it is said in the briefs of counsel, and in the opinion of the referee, that this indorsement purported to be a cancellation of the declaration of trust. The record of the trial, however, contains no suggestion, either in the questions or comments of counsel made at the time the indorsement was offered in evidence, or subsequently, indicating its character. There is no basis, therefore, on this review, for holding that its exclusion was error, for we are not advised by the record that the indorsement was either material or relevant. Mrs. Washburn and her husband both testified that the $35,000 was a gift from Emma J. Richardson to Mrs. Washburn. Against this testimony, the contestants put in evidence an affidavit made by Emma J. Richardson in a proceeding in surrogate's court, in which she stated in substance that, on the date of the bond and mortgage, she loaned the estate $35,000; that she paid the sum in two checks, copies of which were given; and that, as security for the loan, she took a mortgage executed by the executors and all the heirs at law and next of kin of Benjamin Richardson. Afterwards Emma J. Richardson was called as a witness in behalf of Mrs. Washburn, and the following questions were asked, and the answers excluded, against Mrs. Washburn's exception:

"Q. Mrs. Richardson, do you at present own, or have you any interest, legal or equitable, in, the $35,000 bond and mortgage which has been offered in evidence in this proceeding?" "Q. If you have no interest in that bond and mortgage at present, to whom have you parted with whatever interest you ever had in it?"

Mrs. Washburn testified that Emma J. Richardson had given to her this $35,000 mortgage, and she was entitled to Mrs. Richardson's testimony on that subject.

The order should be reversed, the report of the referee set aside, and another referee appointed, with costs to the appellant executors, payable out of the fund. All concur.