91 509|
2ap 28|
91 509|
5ap150|
91 509|
151a 282|

THE TRUSTEES OF AMHERST COLLEGE, THE TRUSTEES OF DARTMOUTH COLLEGE, HAMILTON COLLEGE, THE UNIVERSITY OF ROCHESTER, THE PRESIDENT AND TRUSTEES OF WILLIAMS COLLEGE, Respondents, *against* THOMAS G. RITCH, JUSTUS L. BULKLEY and HENRY B. VAUGHAN, Individually and as Trustees and Executors of the Last Will and Testament and Codicils thereto of DANIEL B. FAYERWEATHER, Deceased; JOHN B. REYNOLDS and MORRIS B. BEARDSDEY, as Executors of the Last Will and Codicil of LUCY FAYERWEATHER, Deceased; MARY W. ACHTER, EMMA S. FAYERWEATHER, THE MT. SINAI HOSPITAL, THE PRESBYTERIAN HOSPITAL, in the City of New York; THE WOMAN'S HOSPITAL, in the State of New York; THE MANHATTAN EYE AND EAR HOSPITAL, THE NEW YORK EYE AND EAR INFIRMARY, THE MANHATTAN DISPENSARY, in the City of New York; THE MONTEFIORE HOME FOR CHRONIC INVALIDS, THE METHODIST EPISCOPAL HOSPITAL, in the City of Brooklyn, N. Y.; ST. LUKE'S HOSPITAL, in the City of New York; THE NEW YORK CANCER HOSPITAL, THE ST. VINCENT'S HOSPITAL, in the City of NEW YORK; THE TRUSTEES OF UNION COLLEGE, in the Town of Schenectady, in the State of New York; HAVERFORD COLLEGE, at Haverford College Post-office, Montgomery County, Penn.; The UNIVERSITY OF THE CITY OF NEW YORK, THE UNIVERSITY OF PENNSYLVANIA, THE BROWN UNIVERSITY, of Providence, R. I.; THE PRESIDENT AND FELLOWS OF HARVARD UNIVERSITY, PRINCETON COLLEGE, at New Brunswick, N. J.; WELLS COLLEGE, at Aurora, N. Y.; ELMIRA FEMALE COLLEGE, RUTGERS COLLEGE, VASSAR COLLEGE, Poughkeepsie, N. Y.; BARNARD COLLEGE, THE PETER COOPER UNION FOR THE ADVANCEMENT OF SCIENCE AND ART, THE SHATTUCK SCHOOL, at Faribault, Minn.; TRINITY COLLEGE, at Hartford, Conn.; THE PRESIDENT AND FELLOWS OF YALE COLLEGE, in New Haven, Conn.; THE TRUSTEES OF COLUMBIA COLLEGE, in the City of New York, Appellants, Impleaded with BOWDOIN COLLEGE, THE UNION THEOLOGICAL SEMINARY, in the City of New York; CORNELL UNIVERSITY, LINCOLN UNIVERSITY, THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, THE HAMPTON NORMAL AND AGRICULTURAL INSTITUTE, THE ADELBERT COLLEGE

OF THE WESTERN RESERVE UNIVERSITY, PARK COLLEGE, LUCY J.
BEARDSLEY, ANNER AMELIA REYNOLDS, NORTHWESTERN UNIVER-
SITY, WESLEYAN UNIVERSITY, at Middletown, Conn.; LAFAYETTE
COLLEGE, at Easton, Penn.; MARYVILLE COLLEGE, WABASH COL-
LEGE, MARIETTA COLLEGE, Defendants.

*Will — bequest to executors, who promise to give it to certain corporations — the
executors become trustees — the promise can be enforced — bequest to educational
corporations in excess of the amount allowed by statute — who may contest the
will — waiver by the widow of the right to object.*

Where a testator bequeaths his residuary estate to his executors, who had prom-
ised him to divide it among certain educational institutions in accordance with
his wishes as expressed in his will and in memoranda made by him, the execu-
tors take the estate impressed with a trust in favor of such institutions. They
have no interest in it as individuals and can be compelled to apply the property
in accordance with the prior understanding in that regard had with them by
the testator.

No person or corporation (except the State in certain cases) can impeach the
validity of the disposition of property by will, unless it appears that the contest-
ant, if successful, will acquire some interest under the statutes of descent or of
distribution, or as devisee or legatee, in the property attempted to be disposed
of by the will; and if the person entitled to contest a will, or some one or more
of its provisions, voluntarily and for a valuable consideration, received after
the testator's death, with full knowledge of the invalidity of the will, divests
himself of all interest in the property attempted to be disposed of by it, he can-
not impeach its validity.

On the 6th day of October, 1884, Daniel B. Fayerweather made and executed his
last will and testament, by the ninth clause of which he bequeathed certain
sums of money to twenty educational institutions, and by the tenth clause he
devised his residuary estate to his executors, in trust, to convert it into cash
and divide it equally among the corporations named in the ninth clause. Hav-
ing been advised that the will violated the provisions of chapter 360 of the Laws
of 1860 in that it gave more than one-half of his estate to literary or scientific
institutions, Fayerweather delivered the will to one of the executors, with a cer-
tificate stating that he had been so advised, and expressing the hope that his
heirs would permit the will to have effect, and subsequently by a codicil, made
in December, 1884, he revoked the tenth clause of his will and bequeathed his
residuary estate to his executors, at the same time delivering to one of them a
memorandum which stated that he had made his executors his residuary
legatees in the confidence that thereby his intentions, as expressed in
the will, would be carried into effect. Subsequently he made two
other codicils to his will, and thereafter, in November, he wrote a letter
to one of his executors, calling his attention to the devise of all his residuary
estate to his executors, made by the first codicil, and asking the effect of that
clause in the codicil. The executor answered that the legal effect of the

codicil was to vest the title to the residuary estate in the executors as individuals; that the executors intended to carry out his wishes; that they would have no moral right to treat any portion of the estate otherwise than in a manner which would conform to the testator's wishes, and he further stated that neither he nor his co-executor would wish to derive any personal benefit under the codicil. The testator thereupon made a further codicil in which he confirmed the will and codicils and increased the number of his executors from two to three.

The testator subsequently died, and thereafter this action was brought by certain of the educational institutions named in the will, alleging that the executors proposed to dispose of the residuary estate contrary to the understanding between the testator and the executors, and in violation of the trust under which it was given to them, and asking to have it declared that the executors held the estate as trustees for the institutions named in the ninth clause of the will, and that they held it in the manner set forth in the will and codicils, and not otherwise.

*Held*, that the executors took no interest in the residuary estate as individuals, but that they held it as trustees for the institutions named in the ninth clause of the will, and in the manner prescribed by the will and its codicils;

That, although the testator had given more than one-half of his estate, after the payment of his debts, to literary and scientific institutions, in contravention of the provisions of chapter 360 of the Laws of 1860, yet as the widow and the heirs of the testator had, upon a settlement of their claims made at the time when the will was offered for probate, voluntarily and for a valuable consideration released all their rights in the estate, there was no one entitled to raise the objection that the will violated the statute.

APPEAL by the defendants, Thomas G. Ritch and others, individually and as trustees and executors of the last will and testament and codicils of Daniel B. Fayerweather, deceased, and others, from a judgment of the Supreme Court in favor of the plaintiff and the defendants, Lincoln University and others, entered in the office of the clerk of the county of New York on the 31st day of December, 1894, upon the decision of the court rendered after a trial at the New York Special Term, and an appeal by the defendants, John B. Reynolds and another, as executors, etc., of Lucy Fayerweather, deceased, and others, from the whole of said judgment, except so far as the same awards costs and an extra allowance to the defendant Barnard College.

This action was begun in June, 1893, by five of the twenty legatees, all educational corporations, mentioned in the ninth clause of the testator's will, to recover a judgment declaring that Thomas G. Ritch, Justus L. Bulkley and Henry B. Vaughan took the property

devised and bequeathed to them — the residuary estate — in trust under the tenth clause, as modified by memorandums signed by the testator for said twenty educational corporations. The executors of the testator's widow, his heirs, next of kin, his executors, devisees, legatees, and the beneficiaries in the deed of gift, executed by Ritch, Bulkley and Vaughan, February 21, 1891, are defendants. In addition to the appellants, the following defendants filed and served answers herein : Lincoln University, Lafayette College, Northwestern University, Park College, Wesleyan University, Marietta College, St. Vincent's Hospital, the President and Trustees of Bowdoin College, the Rector and Visitors of the University of Virginia, Cornell University, Maryville College, Wabash College and the Union Theological Seminary.

It was held at Special Term that the residuary estate devised and bequeathed to Ritch, Bulkley and Vaughan was held in trust by them, under the tenth clause of the will and memorandum of March 22, 1889, for the following purposes : (1) To pay to the Northwestern University $100,000, with a proportionate share of the income of the residuum (none of the litigants contesting) ; and (2) to divide the remainder equally among the twenty educational corporations mentioned in the ninth clause.

None of the parties, except those designated as appellants in the title of this opinion, have appealed, and they are divisible into four classes : (1) The executors of Lucy Fayerweather (the testator's widow) and two of the testator's heirs and next of kin, who assert that by the will and codicils the testator devised and bequeathed to Ritch, Bulkley and Vaughan the residuary estate, in trust, to be divided equally among said twenty educational institutions, and that, under chapter 360 of the Laws of 1860, only one-half of the testator's estate could be legally devised and bequeathed to such institutions ; (2) Thomas G. Ritch, Justus L. Bulkley and Henry B. Vaughan, the residuary devisees and legatees, who assert that under the will and codicils they took the residuary estate, with power to dispose of it, and that the beneficiaries mentioned in their deed of gift are severally entitled to hold the sums assigned to them ; (3) the donees under the deed of gift ; (4) the trustees of Columbia College, one of the twenty corporations mentioned in the ninth clause, wherein it is bequeathed $200,000, and one of the six resid-

uary beneficiaries mentioned in the deed of gift, which appealed, but filed no brief in this court.

October 6, 1884, Daniel B. Fayerweather, a resident of this city, executed his last will and testament, by which he made various specific devises and bequests to individuals, the validity of which is not questioned, and none of its clauses require consideration, except the eighth, ninth and tenth, which are as follows:

"*Eighth.* After the payment of the legacies and bequests hereinbefore made I give and bequeath to the Presbyterian Hospital, located in the city of New York, the sum of $25,000.

"To St. Luke's Hospital, in said city, $25,000.

"To the Manhattan Eye and Ear Infirmary, in said city, $25,000.

"To the Woman's Hospital, in said city, $10,000.

"To Mount Sinai Hospital, in said city, $10,000.

"*Ninth.* Subject to the conditions and limitations in this paragraph hereinafter contained:

"I give and bequeath to Bowdoin College, at Brunswick, Maine, the sum of one hundred thousand dollars.

"To Dartmouth College, at Hanover, New Hampshire, the sum of one hundred thousand dollars.

"To Williams College, at Williamstown, Massachusetts, the sum of one hundred thousand dollars.

"To Amherst College, at Amherst, Massachusetts, the sum of one hundred thousand dollars.

"To Wesleyan University, at Middletown, Connecticut, one hundred thousand dollars.

"To Yale College, at New Haven, Connecticut, three hundred thousand dollars, of which one hundred thousand dollars shall be used for the purposes of the Sheffield Scientific School connected with said college.

"To Columbia College, in the city of New York, two hundred thousand dollars.

"To Union Theological Seminary, in the city of New York, the sum of fifty thousand dollars as a special fund to be used for the endowment of what are known as cadetships, such use, however, being subject to the discretion of the board of directors of such institution.

" I also give and bequeath unto Hamilton College, at Clinton, New York, one hundred thousand dollars.

" To the University of Rochester, at Rochester, New York, one hundred thousand dollars.

" To Cornell University, at Ithaca, New York, two hundred thousand dollars.

" To Lafayette College, at Easton, Pennsylvania, fifty thousand dollars.

" To Lincoln University, at Lower Oxford, Pennsylvania, one hundred thousand dollars.

" To the University of Virginia, at Charlotteville, Virginia, one hundred thousand dollars.

" To Hampton University, at Hampton, Virginia, one hundred thousand dollars.

" To Maryville College, Maryville, Tennessee, one hundred thousand dollars.

" To Marietta College, at Marietta, Ohio, fifty thousand dollars.

" To Adelbert College, at Cleveland, Ohio, fifty thousand dollars.

" To Wabash College, at Crawfordsville, Indiana, fifty thousand dollars.

" To Park College, at Parkville, Missouri, fifty thousand dollars.

" In case the condition and circumstances of any of the institutions named in this paragraph of my will shall be so changed that in the judgment of my executors it is not expedient to pay over all or any of said moneys to such institution, I authorize and empower my executors, in the exercise of their discretion, to withhold or reduce the amounts herein directed to be given.

" If my estate shall not be sufficient to pay in full all the legacies and bequests in this my will contained, the legacies and bequests provided for prior to this paragraph of my will shall be first paid in full, and the bequests contained in this paragraph contained shall be paid *pro rata.*

" *Tenth.* All the rest, residue and remainder of my estate, real and personal, of which I shall die possessed, I give, devise and bequeath unto my executors, to have and to hold the same, in trust, nevertheless, to sell and to convert into cash, and to divide the same equally among the several corporations mentioned in the ninth paragraph of this my will, share and share alike."

By the eleventh clause Justus L. Bulkley and Thomas G. Ritch were nominated as executors of the will and as trustees of the estate, with power to sell and convey all of the real estate not specifically devised.

Upon the execution of said will the testator delivered it and the following certificate to Thomas G. Ritch for safe keeping :

"NEW YORK, *Oct.* 6, 1884.

"This certifies that I have executed my will of this date, having been advised by my counsel of the provisions and restrictions of the law of this State relative to benevolent corporations. I trust my heirs will permit the provisions of this my will to be carried into effect.

"D. B. FAYERWEATHER."

December 13, 1884, the testator executed a codicil by which he confirmed his will except as therein modified. He revoked the tenth clause and provided by the third clause in the codicil as follows :

"III. All the rest and residue of my estate, of whatsoever character and wheresoever situated the same may be, of which I shall die possessed, and remaining after the provisions of the first nine paragraphs of my will have been duly complied with and carried into effect, I give, devise and bequeath to Justus L. Bulkley and Thomas G. Ritch, named in the eleventh paragraph of my said will, to them and their heirs forever."

Upon the execution of said codicil the testator delivered it and the following memorandum to Thomas G. Ritch for safe-keeping :

"NEW YORK, *Dec.* 11*th*, 1884.

"PRIVATE MEMORANDUM.

"I have made Messrs. Bulkley and Ritch my residuary legatees, in the confidence that thereby my intentions, as expressed in my will, shall be carried into effect, and without litigations on the part of any person or persons interested.

"In case of my death I trust they will take such steps by will or otherwise as will protect my estate against the contingency of the death of either before my estate is settled and distributed.

"D. B. FAYERWEATHER."

January 7, 1888, the testator executed a second codicil by which he gave three legacies aggregating $15,000, and nominated Henry B. Vaughan as executor of his will and trustee of his estate in addition to Justus L. Bulkley and Thomas G. Ritch, and conferred the same powers on the three as were conferred by the will on Bulkley and Ritch.

March 19, 1889, the testator executed a third codicil by which he ratified his will and codicils, except as therein modified. He directed that $5,000 be expended in the purchase of a lot in Wood-lawn cemetery and in the erection of a suitable monument. He increased an annuity to Anna Amelia Joyce from $1,000 to $4,000. He increased legacies to Charles M. Baker and Henry M. Baker from $2,500 each to $5,000 each, and legacies to Mary W. Achter and Emma S. Fayerweather (now Drury) from $10,000 each to $20,000 each, and also bequeathed to nine individuals legacies aggregating $11,600.

Upon the execution of this codicil the testator delivered it and the following memorandum to Thomas G. Ritch for safe-keeping:

"PRIVATE MEMORANDUM.

"Having made inquiries with regard to Hampton and Lincoln Universities, it is my judgment that the bequests to them should be withheld.

"I think the bequest to Cornell University should not exceed $100,000.

"If the Northwestern University at Evanston, Illinois, is in a prosperous condition, I would recommend that $100,000 be given to it.

"If the following persons are in my employ at the time of my death, I suggest that they receive the following sums:

"Rogers and Blake, $500 each.

"Gould, Campbell and Stone, $300 each, and Carpenter, $250; also James, who now opens and closes the store, $100; John Dixon, $200.

"I also wish that $1,000 be given to Miss Joyce immediately after my decease, in addition to the provision made for her in my will.                              D. B. FAYERWEATHER.

"*Mch.* 22, 1889."

On the 13th of November, 1890, Mr. Ritch, upon the testator's order, delivered his will, and the first, second and third codicils to Henry B. Vaughan, who, on the same day, delivered them to the testator. On the next day the following letter was delivered to Mr. Ritch :

"11 EAST FIFTY-SEVENTH STREET, N. Y. CITY,

"*November* 13, 1890.

"Mr. THOMAS G. RITCH :

"DEAR SIR.— I have examined my original will, and the first, second and third codicils thereto, handed by you to Mr. Vaughan at my request.

"By the tenth article of my will I left my residuary estate to my executors in trust, to be equally divided among certain corporations and institutions.

"By the first codicil it seems that I revoked this tenth article of my will, and then made the following disposition of my residuary estate :

"'III. All the rest and residue of my estate, of whatsoever character and wheresoever situated the same may be, of which I shall die possessed and remaining after the provisions of the first nine paragraphs of my will have been fully complied with and carried into effect, I give, devise and bequeath to Justus L. Bulkley and Thomas G. Ritch, named in the eleventh paragraph of my said will, to them and their heirs forever.'

"Please advise me at once, in writing, what is the legal effect of this clause, and to whom and how would my residuary estate go in case of my death, supposing this first codicil to remain in force.

"Yours truly,

"D. B. FAYERWEATHER."

To this letter Mr. Ritch replied as follows :

"18 WALL STREET, NEW YORK,

"*November* 14*th*, 1890.

"D. B. FAYERWEATHER, Esq. :

"DEAR SIR.— The intention of the change in question was to enable Messrs. Bulkley and myself to carry out the intentions of the will as modified by the various private memoranda in my possession. Neither Mr. Bulkley nor myself would have any moral right to

treat any portion of your estate otherwise than as we know would conform to your wishes. I suggest that I call on you with these, and if still approved by you, that they be left in a sealed package with Miss Joyce, or any one named by you. The legal effect of the clause in question is to vest the title to the residuary estate in Messrs. Bulkley and myself, but, as I have said, neither Mr. Bulkley nor I would wish to derive any personal benefit under this codicil.

"Yours truly,

"THOS. G. RITCH."

November 15, 1890, the testator executed a fourth codicil by which he ratified and confirmed his said will and codicils, and especially confirmed the revocation of the tenth clause in his will, and changed the third clause of the first codicil of December 13, 1884, so as to read as follows :

"*Third.* I hereby amend and change the third paragraph of the codicil dated and made December thirteen, 1884, so as to read as fellows:

"All the rest and residue of my estate, of whatsoever character and wheresoever situated the same may be, of which I shall die possessed, and remaining after all the specific legacies in my said will and the several codicils thereto have been paid, and all the provisions of said will and codicils have been fully complied with and carried into effect, I give, devise and bequeath to Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, to them and their heirs. forever."

November 15, 1890, the testator died leaving said last will and testament and four codicils unrevoked. The testator left surviving Lucy Fayerweather, his widow, and three nieces, Lucy J. Beardsley, Mary W. Achter and Emma S. Drury, his heirs and next of kin. The testator's estate amounted at his death to upwards of $6,000,000, and after providing for all the annuities and the specific devises and bequests, the residuary estate amounted to upwards of $3,000,000.

December 5, 1890, the will and codicils were filed for probate, and thereupon the widow and next of kin filed various objections and a contest ensued, but, before its conclusion, a settlement was agreed upon and thereupon the widow and next of kin executed the following instrument:

" In consideration of the instrument of even date herewith executed by Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, residuary devisees and legatees under the will, meaning thereby the original will and the subsequent codicils of Daniel B. Fayerweather, late of the city of New York, deceased, and of its delivery to Henry Stoddard and Stephen B. Nash, we, the undersigned, being the widow and all of the next of kin of the said Daniel B. Fayerweather, do hereby severally agree for ourselves, our and each of our heirs, executors and administrators, as follows :

" 1. All objections to the probate of the will and four codicils of the late Daniel B. Fayerweather, offered for probate to the surrogate of the county of New York, are hereby withdrawn, and we consent to the probate of the same.

" 2. No suit shall hereafter be brought for the construction of the said will and codicils by either of them, or to set aside the will and codicils, or either of them ; and we further agree not to make any claim upon the said Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, or either of them, or against their heirs or personal representatives, or either against them, the said Bulkley, Ritch and Vaughan as executors, or as residuary legatees, other than for the amounts left to us by the will and codicils aforesaid, and the deed of gift executed by the said Bulkley, Ritch and Vaughan on the 24th day of February, 1891, and the instrument dated on the 5th day of March, 1891.

" 3. Upon the payment to the undersigned respectively of the several amounts mentioned in said deed of gift, and said instrument, we will severally execute a general release of all claims except those arising under the will and codicils, both to the executors and to the donees mentioned in the deed of gift, dated on the 24th day of February, 1891, and to the said Bulkley, Ritch and Vaughan, individually.

" In witness whereof, we have hereunto set our hands and seals this 5th day of March, 1891.

" Executed in triplicate."

The following is a copy of the instrument referred to in the foregoing contract:

" WHEREAS, we, the undersigned, Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, residuary devisees and legatees under

the will, meaning thereby the original will and the subsequent codicils of Daniel B. Fayerweather, late of the city of New York, deceased, did, under our hands and seals, on the 24th day of February, 1891, execute a deed of gift disposing of the residuary estate left to us by the said will, and in and by said deed reserved the power to make and retain the right to assent to any enlargement of the $15,000 given by the will to Mrs. Fayerweather, which she might desire, and also reserved the power to make and retain the right to assent to any enlargement of the provision made by the will for Mrs. Mary W. Achter and Mrs. Emma S. Drury, in case we should be satisfied that such enlargement would not be against the wishes of Mr. Fayerweather; and

" WHEREAS, a desire has been expressed to us by Mrs. Fayerweather for the enlargement hereinafter made of the amount left to her by the will, as aforesaid; and

" WHEREAS, we have become satisfied that it would be the wish of Mr. Fayerweather to make the enlargement hereinafter provided of the provision by the said will for Mrs. Achter and Mrs. Drury, aforesaid,

" Now, know all men by these presents, that under the power, authority and rights reserved and retained by the deed of gift aforesaid.

" *First.* We hereby give —

" 1. To the wife of the said Daniel B. Fayerweather, deceased, the capital sum of two hundred and twenty-five thousand dollars, bearing interest from April 4, 1891, upon any part thereof then unpaid, to be at her absolute disposal, and also to increase her annuity of $15,000 a year, so long as she shall live, to the sum of $25,000 for the period of her life, and we also agree to execute to her a deed of the lot in Woodlawn cemetery, intended for the remains of Mr. Fayerweather.

" 2. To Mrs. Mary W. Achter the sum of $42,500 and Mrs. Emma S. Drury the sum of $42,500, bearing interest from April 4, 1891, upon any part thereof then unpaid.

" *Second.* And inasmuch as the reservation and retaining of the powers and rights to make the foregoing gifts were in the said deed of gift executed on the 24th day of February, 1891, hereinbefore mentioned, made the first and second paragraphs thereof, we hereby

declare that the payments hereinbefore provided for shall have precedence over the gifts mentioned in the third, fourth, fifth, sixth, seventh, eighth and ninth paragraphs of said deed of gifts.

" *Third.* The foregoing gifts are made subject to the provisions of the tenth paragraph of the deed of gifts executed on the 24th day of February, 1891, hereinbefore mentioned.

" In witness whereof, we have hereunto set our hand and seals, and delivered this instrument to Henry Stoddard and Stephen P. Nash, mentioned in the deed of gift aforesaid, this 5th day of March, 1891. Executed in triplicate.

> " JUSTUS L. BULKLEY. [SEAL.]
> " THOMAS G. RITCH. [SEAL.]
> " H. B. VAUGHAN. [SEAL.]

" We accept the foregoing instrument under the provisions of the first and second paragraphs of the deed of gift therein mentioned heretofore accepted by us.

" Dated NEW YORK, *March* 5, 1891.

> " HENRY STODDARD.
> " S. P. NASH."

Stephen P. Nash and Henry Stoddard are the persons named in the deed of gift, executed by the residuary legatees and devisees February 24, 1891, who are to hold that instrument as trustees for the donees therein.

Prior to the date of these instruments, and on the 25th of February, 1891, the will was duly admitted to probate, and after the date of these instruments, and on the 20th of March, 1891, the four codicils were admitted to probate, and on the following day letters testamentary were duly issued on said last will, testament and codicils to Thomas G. Ritch, Justus L. Bulkley and Henry B. Vaughan as executors, who immediately qualified and entered upon the discharge of their duties.

Subsequently, and during the year 1891, the twenty institutions mentioned in the ninth clause, except the University of Rochester, duly executed the following instrument :

" WHEREAS, a contest has been proceeding in the Court of the Surrogate of the County of New York against the probate of the last will and testament and four codicils thereto, propounded by the

executors of Daniel B. Fayerweather, deceased, and certain other proceedings have been threatened concerning the construction and validity of the will; and

" WHEREAS, the undersigned are legatees named in said will, and it is to their interest to have the pending controversy settled and the threatened controversy abandoned; and

" WHEREAS, a settlement of all the controversies has been agreed to, whereby the widow and next of kin have agreed to accept the sum of three hundred and ten thousand dollars, and, in consideration thereof, have consented to the probate of the will and codicils as propounded, and agreed to release the estate of said Fayerweather from all claims, excepting those to which the said widow and next of kin are respectively entitled by the provisions of the will and codicils aforesaid;

" Now, in consideration of the foregoing and to enable the provisions of the said settlement to be carried out, it is agreed by the undersigned that the sum of three hundred and ten thousand dollars be paid by the executors of the last will and testament of Daniel B. Fayerweather, deceased, prior to and in preference to the payments to the undersigned, respectively, of the amounts of the legacies in the will contained, and we each, for ourselves, agree that our respective legacies shall be postponed to the payment of the amount above mentioned.

" In witness whereof, the undersigned has caused its corporate seal to be affixed to these presents, and the same to be signed by its President and attested by its Secretary this 22d day of March, A. D., 1891."

The University of Rochester, through its attorney, consented to the terms of settlement. Afterwards the sums which the widow and next of kin severally agreed to accept were paid to them and they executed and delivered a release of which the following is a copy:

" *To All To Whom These Presents Shall Come Or May Concern, Greeting :*

" Know ye, that I, Mary W. Achter, of Muscatine, Iowa, by Morris B. Beardsley, attorney in fact, duly authorized thereto, for and in consideration of the sum of forty-two thousand five hundred dollars lawful money of the United States, to me in hand paid by Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, as executors and trustees under the last will and testament of Daniel

B. Fayerweather, deceased, and individually, and as the representatives of the persons or corporations hereinafter named, forming a class known as donees, under the deed of gift executed by the said Bulkley, Ritch and Vaughan, on February 24th, 1891, which sum is in compromise and full settlement of any and all contest on my part of the will of said Daniel B. Fayerweather, deceased, or concerning his estate, have remised, released and forever discharged, and by these presents do for myself and for my heirs, administrators and executors, remise, release and forever discharge the said Justus L. Bulkley, Thomas G. Ritch and Henry C. Vaughan, as executors and trustees aforesaid as individuals, and as representatives of the said donees, constituting a class, and also the said donees, to wit, the persons and corporations mentioned in a certain deed of gift duly delivered, made by Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, on the 24th day of February, one thousand eight hundred and ninety-one, which deed of gift was introduced in evidence in the probate proceedings of the last will and testament of Daniel B. Fayerweather, deceased, and marked 'Exhibit No. 7, Contestants,' and which said deed of gift is hereby made a part of this release, in order that the persons constituting said class of donees, and to whom this release runs, may be more fully known, and also the legal successors, assigns, heirs, executors and administrators of all the aforesaid persons and corporations, of and from all and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, claims and demands whatsoever, in law or in equity, which, against the said persons or corporations, or any of them, I ever had or now have, or which I or my heirs, executors or administrators hereinafter shall, can or may have, for, upon or by reason of any matter, cause or thing whatsoever, except my claim for the legacy given me by the will and codicils thereto of said Daniel B. Fayerweather, deceased.

    " In witness whereof, I have hereunto set my hand and seal this 12th day of June, in the year one thousand eight hundred and ninety-one.          MARY W. ACHTER.   [SEAL.]
                         " By MORRIS B. BEARDSLEY,
                                   "*Her Attorney.*
" Sealed and delivered in }
    the presence of         }
          " EDWARD MARSHALL GROUT."

The releases executed by Lucy Fayerweather and Emma S. Drury were in substance the same as the foregoing instrument.

On February 24, 1891, Thomas G. Ritch, Justus L. Bulkley and Henry B. Vaughan executed and delivered to Stephen P. Nash and Henry Stoddard an instrument known in this litigation as the deed of gift, of which the following is a copy :

"Know all men by these presents, That we, Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, residuary devisees and legatees under the will, meaning thereby the original will and the subsequent codicils of Daniel B. Fayerweather, late of the city of New York, deceased, prompted by our determination that we will not retain for our own use any part of the residuary estate left to us by his will, and by the desire to make such disposition of his said residuary estate as in our judgment will best honor his memory, do dispose of so much of the same as shall remain after the payment of all lawful fees, expenses and charges, as follows :

"*First.* We reserve the power to make and we retain the right to assent to any enlargement of the $15,000 a year by the will left to Mrs. Fayerweather which she may desire.

"*Second.* We reserve the power to make and we retain the right to assent to any enlargement of the provision made by the will for Mrs. Mary W. Achter and Mrs. Emma S. Drury, in case we shall be satisfied that such enlargement would not be against the wishes of Mr. Fayerweather.

"*Third.* We give to Mrs. Lucy J. Beardsley, wife of Morris B. Beardsley, $100,000. We do this because of Mr. Fayerweather's letter of November 15, 1890, to Mr. Vaughan and Mr. F. B. Myrick; if accepted, this gift is in discharge of any claim under that letter.

"*Fourth.* We give to Miss Anna Amelia Joyce $1,000 ; to Miss Anna Amelia Joyce the annuity of $4,000 provided by the will for the period of her life, instead of for the period mentioned in the will ; to E. M. Upham an annuity of $1,000 for the period of his life ; to provide for such annuities we may either retain an amount for investment, the income of which will, in our judgment, provide for the annuities, or we shall be at liberty by the use of a sum in gross to purchase an annuity from a responsible life insurance company, to be selected by us.

"*Fifth.* We give to George H. Blake $1,000 ; E. Gould, $500 ;

James Campbell, $500 ; H. J. Stone, $500 ; John E. Carpenter, $250 ; John Dixon, $500 ; John C. Baylor, $200 ; Kate Quinn, $100, being the legacy to her of that amount left by the will, and which has elapsed; Albertina C. Hertzman, widow of E. H. Hertzman, $5,000, being the same amount as was left to him by the will; Frank H. Sellman, $2,000 in addition to the $3,000 given by the will; Clara Miller, wife of George L. Miller, $3,000 in addition to the $2,000 given by the will; Patrick Keefe, $200 in addition to the $300 given by the will ; Thomas Donahue, $200 in addition to the $300 given by the will; Owen Keefe, $200 in addition to the $100 given by the will; the Northwestern University, at Evanston, Ill., $100,000 ; Joseph Rogers, $500.

" *Sixth.* The said annuities shall begin from Mr. Fayerweather's death. All the other amounts heretofore mentioned shall draw interest from the expiration of one year from Mr. Fayerweather's death. In the event that the said residuary estate shall be insufficient to pay the above amounts in full they shall abate ratably.

" *Seventh.* After payment in full, as aforesaid, we give to Mount Sinai Hospital $15,000 in addition to the amount given by the will.

" The Presbyterian Hospital, in the city of New York, $25,000 in addition to the amount given by the will.

" The Woman's Hospital, in the State of New York, $200,000 in addition to the amount given by the will.

" The Manhattan Eye and Ear Hospital $25,000 in addition to the amount given by the will.

" The New York Eye and Ear Infirmary, $25,000.

" The Manhattan Dispensary, at Tenth avenue and One Hundred and Thirty-first street, New York city, $25,000.

" The Montefiore Home for Chronic Invalids, $25,000.

" The Methodist Hospital of Brooklyn, $25,000.

" St. Luke's Hospital, in the city of New York, $25,000 in addition to the amount given by the will.

" The New York Cancer Hospital, $25,000.

" The Society of St. Vincent De Paul, in the city of New York, $50,000 ; all without interest.

" In the event that the said residue of the residuary estate shall be insufficient to pay the above amounts in full, they shall abate ratably.

" Each of the gifts mentioned in this article is to be used for the endowment of beds or some other use which, in the judgment of the officers of the institution, is best fitted both to be of the greatest service and, at the same time, best to perpetuate Mr. Fayerweather's memory.

" *Eighth.* After payment in full, as above, we give to : Union College, at Schenectady, $100,000.

" Haverford College, at Haverford College Post Office, Montgomery county, Penn., $50,000.

" The University of the City of New York, $100,000.

" The University of Pennsylvania, $50,000.

" Brown University, at Providence, R. I., $50,000.

" Harvard College, at Cambridge, Mass., $100,000.

" Wesleyan University, at Middletown, Conn., $50,000 in addition to the amount given by the will.

" Princeton College, $100,000.

" Rutgers College, at New Brunswick, N. J., $100,000.

" Wells College, Aurora, $50,000.

" Elmira Female College, $50,000.

" Vassar College, at Poughkeepsie, $50,000.

" Barnard School for Women, in the city of New York, $100,000.

" The Cooper Union, for the Advancement of Science and Art, as a permanent fund, the income to be used as far as necessary for the support of the Women's Art School, $200,000.

" Shattuck School, at Faribault, Minn., $25,000.

" Lafayette College, at Easton, Penn., $50,000 in addition to the amount given by the will.

" Maryville College, $50,000 in addition to the amount given by the will.

" Trinity College, at Hartford, Conn., $50,000.

" Wabash College, $50,000 in addition to the amount given by the will.

" Marietta College, $50,000 in addition to the amount given by the will ; all without interest.

" The amount in each case to be used as a Fayerweather fund in some distinctive manner, either for the erection of buildings, the establishment of scholarships or other use, which in the judgment of the authorities will be of the greatest practical benefit ; the mode

of use to be subject to our approval. A separate account of the fund to be kept by each institution, and in the reports of said institution the account to be separately stated.

"To Yale College, at New Haven, Conn., $150,000, without interest, in addition to the amount given by the will, to be used in the erection of a Fayerweather building, the purpose of the building and its plans to be subject to our approval; but if, in the opinion of the authorities of the college, such building be impracticable, the fund is to be used for the general purposes of the college.

"In the event that the residue of the residuary estate shall be insufficient to pay the above amounts in full they shall abate ratably.

"*Ninth.* All the rest, residue and remainder of such residuary estate, after payment in full as above, we give in equal parts as follows:

"To Yale College, at New Haven, Conn, one part.

"To Columbia College, in the city of New York, one part.

"To Harvard College, at Cambridge, Mass., one part.

"To Princeton College, one part.

"To the Woman's Hospital, in the State of New York, five parts.

"To the Presbyterian Hospital, in the city of New York, one part.

"The gifts in this instrument made to the Woman's Hospital being for the purpose of erecting, or aiding in the erection, of a building to be called the Fayerweather Pavilion of the Woman's Hospital, and until used for that purpose to be kept as an invested fund, the income to be used in providing the benefits of the hospital to women who in whole or in part are unable themselves to meet the expense.

"*Tenth.* The foregoing gifts are subject to our powers as executors, to our rights as executors, devisees and legatees, to turn the general estate into money, to the payment out of the general estate of the collateral inheritance tax, or any other tax provided by law, and are subject further to our right in the event of any question of identification or designation of either of the foregoing donees to determine the same.

"We execute this instrument recognizing that there is pending a contest in proceedings for the probate of Mr. Fayerweather's will, and recognizing further that if such contest shall not prevail a question may be made about our legal rights as devisees and legatees.

" We assume no responsibility for the result of such contest, or of any such question, or for the acts or omissions of each other, or for the amount of or title to any of said residuary estate. Our object is each for himself to give away whatever may come to us as residuary devisees and legatees .nder Mr. Fayerweather's will.

" This instrument is to have only that effect.

" To make the same as effectual as we can we deliver this instrument to Stephen P. Nash, Esq., of the city of New York, and Hon. Henry Stoddard, of New Haven, Conn., to hold for the said donees.

" In witness whereof, we have hereunto set our hands and seals, and we, the said Henry Stoddard and Stephen P. Nash, in evidence of our acceptance of delivery of said instrument, have subscribed our names the 24th day of February, 1891.

" JUSTUS L. BULKLEY,    [SEAL.]

" THOMAS G. RITCH,    [SEAL.]

" H. B. VAUGHAN.    [SEAL.]

" In the presence of

     " JOHN E. PARSONS,

     " HALEY FISKE."

July 16, 1892, Lucy Fayerweather died, leaving a last will and testament, which was duly admitted to probate September 9, 1892, and letters testamentary thereon were then duly issued to John B. Reynolds and Morris B. Beardsley, the executors nominated therein, who immediately entered upon the discharge of their duties.

### COUNSEL FOR APPELLANTS.

*William Blaikie* and *Edward C. James*, for the executors of Lucy Fayerweather, deceased, and for the next of kin of Daniel B. Fayerweather.

*John E. Parsons*, for Bulkley and Vaughan, two of the executors of Daniel B. Fayerweather, and others.

*Stewart L. Woodford* and *William C. Wallace*, for Thomas G. Ritch, one of the executors of Daniel B. Fayerweather, and individually, Cornell University, Marietta College and Elmira Female College.

*William G. Choate,* for appealing donees under the deed of gift of Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, residuary devisees and legatees, executed February 24, 1891.

*Charles M. Earle,* for the Manhattan Dispensary.

*Henry Stoddard* and *Haley Fiske,* for the President and Fellows of Yale College.

CofNSEL FOR RESPONDENTS.

*James L. Bishop, Horace Russell, Elihu Root, Martin W. Cooke* and *William B. Putney,* for the plaintiffs.

*Alfred W. Kiddle,* for Northwestern University.

*William B. Hornblower, Howard A. Taylor* and *Austin Abbott,* for Lincoln University and the Hampton Normal and Agricultural Institute.

FOLLETT, J. :

The testator, by his will and codicils, disposed of his estate as follows :

By the first clause he revoked all former wills. By the second he directed the payment of his debts, funeral expenses and the expenses of settling the estate. By the third, fourth and fifth clauses he devised and bequeathed to Lucy Fayerweather, his wife, $10,000 ; his residence, No. 11 East Fifty-seventh street, with all the household furniture and effects therein, together with the horses and carriages and personal effects in the stable connected with the house, and a net annual income of $15,000 during her life, payable quarterly, which provisions were in lieu of dower. By the seventh clause of the will and the fifth clause of the third codicil he bequeathed $100,000 to Lucy J. Beardsley, $20,000 to Mary W. Achter, and $20,000 to Emma S. Drury, three nieces, who were his only heirs and next of kin. By the sixth clause of the will and the third clause of the third codicil he bequeathed to Anna Amelia Joyce (now Reynolds) a life annuity of $4,000, provided she remained unmarried. By the seventh clause of his will and by the second and third codicils thereto he bequeathed $32,600 to the various

HUN — VOL. XCI. 67

employees and servants. By the eighth clause of his will he gave to five hospitals in the city of New York $95,000, as appears by this clause quoted in the statement of facts. By the ninth clause of his will he bequeathed $2,100,000 to twenty educational corporations. By the third clause of the fourth and last codicil the remainder of his estate was disposed of as follows :

" All the rest and residue of my estate, of whatsoever character and wheresoever situated the same may be, of which I shall die possessed and remaining after all the specific legacies in my said will and the several codicils thereto have been paid and all the provisions of said will and codicils have been fully complied with and carried into effect, I give, devise and bequeath to Justus L. Bulkley, Thomas G. Ritch and Henry B. Vaughan, to them and their heirs forever."

The testator's estate amounted at his death to upwards of $6,000,000, and after providing for all of the annuities and the specific devises and bequests, the residuary estate passing under the clause last quoted amounted to upwards of $3,000,000.

The Special Term found the following facts :

" That the defendants Thomas G. Ritch and Henry B. Vaughan, for themselves and on the part of Justus L. Bulkley, promised Daniel B. Fayerweather, now deceased, and induced him to believe that if he would make them and the defendant Justus L. Bulkley residuary legatees of his estate, as provided in the codicils to his will, dated December 13, 1884, and November 15, 1890, the said residuary legatees would sell and convert said residuary estate into cash and divide the same equally, share and share alike, among the twenty corporations mentioned in the ninth paragraph of the said Daniel B. Fayerweather's will, dated October 6, 1884, including the plaintiffs, after paying $100,000 to the Northwestern University, and that the said Daniel B. Fayerweather made the said Ritch, Bulkley and Vaughan his residuary legatees in and by the said codicils in reliance upon the said promises and inducements, and died leaving the said Ritch, Bulkley and Vaughan his residuary legatees in the belief so induced by them that they would sell, convert and distribute the residuary estate as aforesaid, and that the said Ritch, Bulkley and Vaughan have attempted to dispose of the said residuary estate in violation and disregard of the said promises."

These facts are amply supported by the evidence. The testimony of Ritch and Vaughan and the correspondence conclusively show that they definitely promised the testator to dispose of the residuary estate bequeathed to them in accordance with the provisions of the tenth clause of the will. No other conclusion is possible, and we are of the opinion that the evidence warrants the conclusion that there was an understanding between Justus L. Bulkley and the testator that the estate should be so disposed of. Bulkley had for many years been an intimate friend of the testator, and was nominated as one of the executors in the will of 1880, and he joined with the other residuary legatees in divesting themselves of all personal interest under the residuary clause of the will, which seems to us to show that there was an understanding between the testator and all of the residuary legatees, that the residuum should be disposed of in accordance with the testator's wish, expressed in his will and the memorandums.

This brings the case within the rule laid down in *O'Hara* v. *Dudley* (95 N. Y. 403). The residuary legatees acquired no personal interest in the residuum, but took it as trustees.

The executors of the testator's widow and two of his heirs at law and next of kin seek to have the residuary clause declared invalid, under chapter 360 of the Laws of 1860, which provides :

" Section 1. No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more."

The difficulty with their contention is that the widow and heirs released all of their interest in the estate, for valuable considerations paid to them. This statute was designed for the protection of husbands, wives, next of kin and heirs at law, but it does not in any wise prevent them from releasing to educational corporations the benefits which they might have secured by resisting wills made in contravention of the statute. It is urged that these releases were procured by fraud and undue influence. There is no evidence in the record justifying this contention. The terms of settlement were

agreed on during the controversy in the Surrogate's Court over the probate of the will and codicils, and the widow and heirs were represented in that controversy, and in the settlement, by distinguished counsel, and acted under their advice. The residuary legatees not having any personal interest in the residuary estate, and the widow and heirs having released all their interest therein, there is no person who is entitled to raise the question that the residuary clause is void under the act of 1860.

No person or corporation, except the State in certain cases, can impeach the validity of the disposition of property by will, unless the contestant, if successful, will acquire some interest under the statutes of descent or of distribution, or as devisee or legatee, in the property attempted to be disposed of by the will; and if the person entitled to contest a will, or some one or more of its provisions, voluntarily and for a valuable consideration, received after the testator's death, with full knowledge of the invalidity of the will, divests himself of all interest in the property attempted to be disposed of by it, he cannot impeach its validity.

The judgment should be affirmed, with separate bills of costs in favor of the respondents payable out of the estate.

PARKER, J., concurred.

VAN BRUNT, P. J.:

The facts upon which the controversies in this case arise are not disputed, and, as I understand them, are briefly these: On the 6th of October, 1884, Daniel B. Fayerweather made a will by which in the ninth clause thereof he bequeathed certain sums of money to twenty educational institutions, and then by the tenth clause he devised all the rest, residue and remainder of his estate to his executors in trust to sell and convert into cash, and to divide the same equally among the several corporations mentioned in said ninth paragraph, share and share alike.

Fayerweather was advised by his counsel that the provisions of his will contravened the restrictions of the law of this State relative to benevolent corporations. Upon the execution of the will he delivered it to one of the executors with a certificate stating that he had been so advised and expressing the trust that his "heirs" would permit the provisions of the will to be carried into effect.

The statute which was contravened by the provisions of the will was that which prohibited a person having a husband, wife, child or parent from devising or bequeathing to any benevolent, charitable, etc., society in trust or otherwise, more than half of his or her estate after the payment of his or her debts.

On the 13th of December, 1884, Fayerweather, having become suspicious as to the forbearance of his widow and next of kin in the assertion of the rights conferred upon them by the statute above mentioned, executed a codicil to his will by which he revoked the tenth clause and bequeathed all the rest, residue and remainder of his estate to the persons named in the eleventh paragraph of his will as his executors. Upon the execution of said codicil the testator delivered it with a memorandum to Mr. Ritch, one of his executors, in which he stated that he had made these executors his residuary legatees in the confidence that thereby his intentions as expressed in his will would be carried into effect, and without litigations on the part of any person or persons interested.

On the 7th of January, 1888, the testator executed a second codicil by which he gave certain additional legacies, named a third person as executor of his will and trustee of his estate, and conferred the same powers on the three executors as had been conferred by the will on the two.

On the 19th of March, 1889, the testator executed a third codicil, by which he ratified his will and codicils, except as therein modified. He made some changes and gave some additional legacies. Upon the execution of this codicil he delivered it with a memorandum to one of his executors for safe-keeping. The memorandum related to sums to be given to certain charitable institutions, and also some small gifts to divers persons.

On the 13th of November, 1890, this executor, upon the testator's order, delivered his will and the first, second and third codicils to the executor whom the testator had last named, who delivered them to the testator. On the next day the testator sent a letter to one of his executors, calling his attention to the revocation of the tenth clause of the will by the first codicil, and the devise of all the rest, etc., of his estate to the executors named in the eleventh clause, and asked : " Please advise me at once, in writing, what is the legal effect of this clause, and to whom and how would my residuary estate

go in case of my death, supposing this first codicil to remain in force."

To this letter the executor Mr. Ritch replied : " The intention of the change in question was to enable Messrs. Bulkley and myself to carry out the intentions of the will, as modified by the various private memoranda in my possession. Neither Mr. Bulkley nor myself would have any moral right to treat any portion of your estate otherwise than as we know would conform to your wishes. I suggest that I call on you with these, and, if still approved by you, that they be left in a sealed package with Miss Joyce, or any one named by you. The legal effect of the clause in question is to vest the title to the residuary estate in Messrs. Bulkley and myself, but, as I have said, neither Mr. Bulkley nor I would wish to derive any personal benefit under the codicil."

On the 15th of November, 1890, the testator executed a fourth codicil by which he ratified and confirmed his will and codicils, and especially confirmed the revocation of the tenth clause and changed the third clause of the first codicil so as to devise the residue, etc., of his estate to his three executors, instead of two.

On the same day the testator died, leaving said will and four codicils unrevoked. This will and codicils have been admitted to probate.

By these instruments it is clear that the executors and devisees took the rest, residue and remainder of the estate as trustees, the corporations named in the ninth clause of the will being the *cestuis que trust*, which trust can be enforced by the *cestuis que trust*, unless the rights of some parties secured to them by law will be thereby contravened.

It is clear that these executors could not put this residuary estate into their own pockets and apply it to their own uses, the testator having made this disposition of his estate upon their promise to apply it in the manner provided for by his will.

The tenth clause of the will, although revoked by the codicils, still existed for the purpose of defining the trust.

The testator left him surviving a widow, who was the only person who could call into operation for her protection the statute which we have quoted. The widow, however, has released to the executors all claims to the estate, which release cannot be successfully

attacked or set aside. There is, consequently no person for whose benefit the statute can operate.

No rights of heirs and next of kin have been infringed upon, because the trust does not contravene any statute for their benefit and is not the subject of attack by them. If it were, they have also executed a release of their interest in the estate in the same manner as the widow.

We have, therefore, the case of a trust established which would be valid as against all the world but for the statute in favor of the widow, and the widow having released all her rights in the estate, how can her representatives claim the invalidity of a trust as to property in which she had no interest.

The widow was not aggrieved, and under such circumstances the trust must be executed.

Judgment affirmed, with separate bills of costs in favor of the respondents, payable out of the estate.